■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NIKOLIN CAMAJ, Appellant. [750 NYS2d 185] —Mercure, J. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered April 26, 2000, upon a verdict convicting defendant of the crime of burglary in the third degree.

Defendant's conviction arises out of his involvement in the burglary of a Cumberland Farms retail store in the Town of Schodack, Rensselaer County, during the early morning hours of August 10, 1999. On appeal, defendant challenges the legal sufficiency of the trial evidence, County Court's refusal to sup-

press the in-court identification of defendant by Ralph Simeone as the product of an allegedly suggestive identification procedure, and the 2⅓ to 7-year sentence of imprisonment imposed by County Court as harsh and excessive. In our view, the contentions are lacking in merit, and we accordingly affirm the judgment of conviction.

Viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620, 621), and notwithstanding the fact that the evidence against defendant was entirely circumstantial, we conclude that the trial evidence was sufficient to permit a rational trier of fact to find that defendant was liable as an accessory for the burglary committed by his companions, Mervan Rugovac and Nikolin Prelaj (*see* Penal Law § 20.00; *People v Grassi*, 92 NY2d 695, 697). The evidence shows that defendant and his two companions were traveling together from New York City to the Buffalo area. They stopped to spend the night at the Pioneer Motel, which is situated directly across the street from the Cumberland Farms store. After checking in, one of the three asked the motel manager for directions to the nearest Radio Shack store. Subsequently, defendant and one of his companions traveled to a Radio Shack store and purchased two two-way radios, which were paid for by defendant. Late that night, Rugovac and Prelaj broke into the Cumberland Farms store through a two-foot hole that had been cut in the roof of the building. Police officers were dispatched to the scene at approximately 3:30 A.M. on August 10, 1999. They found Prelaj hiding behind an air conditioner on the store roof. Rugovac was found inside the drop-ceiling of the store; he had $2,000 on his person and a two-way radio within his reach.

Questioning prompted by police officers' suspicion about a BMW automobile in the parking lot of the Pioneer Motel led them to defendant's room. The police officers knocked on the door and, when they received no response, opened the door with the key provided them by the motel manager. They found defendant in bed wearing sweat pants, a T-shirt and socks. An initial search of the motel room disclosed some Corona beer bottles and, when the police searched a dumpster outside the motel, they found more Corona beer bottles and the boxes and a sales receipt for the Radio Shack two-way radios. A further search of the motel room disclosed a Radio Shack two-way radio secreted under water in the toilet tank. When the radio was later able to be operated, it was shown to be set to channel 8, the same as the radio found in the ceiling near Rugovac.

In our view, the web of circumstantial evidence leads to the

unmistakable conclusion that defendant served as a lookout during the course of the burglary. No other rational explanation can be made for the existence of one two-way radio in the motel room and the other in the Cumberland Farms store. There is nothing in the record to suggest that anyone other than defendant, Prelaj and Rugovac had access to the motel room and it defies logic that either Prelaj or Rugovac would place one radio in the toilet and take the other one with them during the burglary. Further, the wildly inconsistent accounts testified to by Prelaj and Rugovac did nothing to absolve defendant of responsibility.

We are also unpersuaded that the photographic array displayed to Simeone, a Radio Shack manager, was unduly suggestive. We first note that defendant is incorrect in his assertion that Simeone was shown one array of six photographs of subjects, one of whom was an African American. The record makes it clear that Simeone was shown two arrays of six photographs each, for a total of 12 photographs, and all of the individuals displayed in those photographs appear to be Caucasians. Although it is true that the height chart shown behind the subjects is different in three of the photographs, including the photograph of defendant, we do not see that minor distinction as one that would signal to the viewer that the police had made a particular selection (*see People v Jackson*, 282 AD2d 830, 832, *lv denied* 96 NY2d 902).

As a final matter, we reject the contention that the sentence imposed was harsh or excessive. Although the sentences received by Prelaj and Rugovac were more lenient than that received by defendant, the sentencing disparity can be justified by defendant's refusal to cooperate with the prosecution, whereas the other participants entered into a plea bargain, cooperated with authorities in their investigation and testified at defendant's trial for the People (*see People v Merchant*, 171 AD2d 887, 888; *People v Warden*, 141 AD2d 913, 914-915). Further, defendant's status as a lookout, the fact that he "comes from a good family," and the absence of a prior criminal record do not strike us as extraordinary circumstances warranting modification of the sentence (*see People v Irizarry*, 289 AD2d 875, 876).

Defendant's remaining contentions have been considered and found to be unavailing.

Cardona, P.J., Spain, Carpinello and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.